106 So.2d 550 (1958)
Cyrus French WICKER, Appellant,
v.
The BOARD OF PUBLIC INSTRUCTION OF DADE COUNTY, Florida, a body corporate and politic under the laws of the State of Florida, Appellee.
Supreme Court of Florida.
January 8, 1958.
On Rehearing November 12, 1958.
Rehearing Denied December 8, 1958.
*551 Julian R. Benjamin, Miami, and Irving Peskoe, Homestead, for appellant.
Boardman, Bolles, Davant & Lloyd, Miami, for appellee.
THOMAS, Justice.
This litigation had its origin in two actions, one in the circuit court and one in the federal district court, instituted by the appellant to recover money from the appellee. After the appellee's motion, in the state court, to dismiss had been denied and it had answered in compliance with the court's order, the parties entered into negotiations for settlement of the controversy. Eventually it was agreed that the appellee would give to the appellant a quitclaim deed to certain land involved and disclaim any interest in the land in exchange for a dismissal, with prejudice, of appellant's actions, at appellant's cost.
Pursuant to a resolution unanimously adopted by the appellee-board 18 January *552 1956 the disclaimer was executed 12 days later and it was recorded the sixth of the following month. The action in the circuit court was dismissed 7 February 1956, and the one in the federal court February thirteenth. In each order of dismissal the compromise agreement was identified. On February twentieth appellant contracted to sell the land in question to Jack Fleischer, and later Jack Fleischer agreed to sell it to Don R. Solomon. In accordance with the terms of the compromise appellee executed the quitclaim deed March 22 and it was delivered to appellant's attorney, Irving Kalback.
Then, 27 March 1956, the appellee brought the present suit against appellant and against Irving Kalback, custodian of the quitclaim deed, seeking a decree rescinding and cancelling the disclaimer, enjoining the transfer of the quitclaim deed, requiring surrender of this deed to appellee, and holding "for naught" the interest of the appellant or anyone claiming under him.
We continue our digest of the complaint to ascertain the allegations upon which the prayer for relief was based. It was averred that the disclaimer was executed because of a mistake of fact and that prior to the date of execution, the appellee had been owner of the fee simple title to the property described in the disclaimer and quitclaim deed. This was followed by an allegation that the appellee had paid $19,000 for the property. There appeared the remarkable statements that the mistake of fact consisted of failure of the appellee to know that it owned the property in fee simple and that had the appellee "been aware of the fact * * * it would not have executed the Disclaimer"; also that the instrument was "executed in error and through oversight and inadvertence."
It was charged that the appellee had not received any sum of money "whatsoever" as consideration for the disclaimer and deed.
The chancellor granted the relief in a summary decree.
Two questions of law stand out in bold relief against a background of fact which is not in serious dispute: Was there a mistake of fact justifying relief in equity and was there want of consideration for the instruments? Allied with these is the matter of appellee's failure to offer to put the appellant in statu quo.
The allegations of the complaint may be fairly interpreted as presenting the position that the appellee after its experience with the two actions involving the very land described in the deed and disclaimer and after participating in negotiations to settle the suits during which abundant opportunity was present to get all relevant information it did not already have, decided it had made a bad bargain. But the appellant was not responsible for this fault. In this record there is not an inkling that the appellant withheld from the appellee any knowledge, or possessed any, that was not available to the appellee. And certainly appellee's assertion that it did not know it held its own land in fee simple is no basis for the relief. No one was better positioned than appellee to know what it owned.
It should be recorded here that when the matter of compromise came before the appellee-board 18 January 1956 and the board's attorney reported the conditions of the proposed settlement, one of the members of the board requested a summary of the transaction so she could vote more intelligently on the question, and that in deference to her, action was delayed until the end of the meeting to give the legal department time to prepare this summary for the board's information. Later in the minutes appeared the notation that the board had "received from the Legal Department a resume of the case of Cyrus French Wicker vs. Board of Public Instruction," after which, upon recommendation of the Superintendent and the Legal Department, the compromise was approved without a dissent.
The appellee frankly pleaded that the instruments were the result of its own *553 "oversight" and of "inadvertence," but the oversight and inadvertence, or, more accurately, carelessness, are not chargeable to the appellant. By the examination of the public records, or its own records, the appellee could have avoided the dilemma in which it seems to have landed through its own inattention.
We think our decision in Willis v. Hillsborough County, 117 Fla. 1, 157 So. 29, is ample authority for reversal of the decree. Actually the present case is a stronger one for support of appellant's position because the parties were brought into contact as adversaries in two actions. Surely, in their effort to effect a compromise they were dealing at arm's length. During the negotiations towards a settlement, parties on both sides were put on guard. Nothing prevented the appellee from fully informing itself so its best judgment could be used to put an end to troublesome litigation.
It cannot now put the blame on someone who may have got the better of the bargain.
As for the consideration, there was a benefit to appellee from the settlement and appellee must have thought so. It was relieved of defending in the law suits without any responsibility for costs.
Even had a situation of unilateral mistake been shown, warranting the relief the appellee asked, it would have been necessary to restore the appellant to his former status, yet this prerequisite was ignored in the complaint.
It has been intimated that the appellee should be granted relief because of the financial loss it sustained, but we think that the appellee despite its responsibilities as a board directly charged with proper administration of public schools, a function as important as exists under our government, is nevertheless bound in litigation like this, by the same rules that apply to individuals. Willis v. Hillsborough County, supra.
Reversed with directions to dismiss the bill.
Reversed.
TERRELL, C.J., ROBERTS and DREW, JJ., and HARRIS, Circuit Judge, concur.

On Rehearing Granted
ROBERTS, Justice.
We have reconsidered this cause after oral argument on rehearing granted and have concluded that we should recede from our former opinion for the reasons stated hereafter.
The basic facts of the controversy are set forth in the opinion by Mr. Justice THOMAS and will not be repeated here. So that our decision on rehearing granted may be viewed in sharper perspective, however, the following chronological history of events culminating in the instant litigation is recounted:
On September 28, 1926, the Board of Public Instruction of Dade County entered into a contract of purchase and sale with Whitphel Properties, Inc., in which the Board agreed to buy the subject property for a purchase price of $120,000.00 and, pursuant thereto, executed seven promissory notes evidencing its indebtedness. On May 9, 1928  the land "boom" in Florida having collapsed  the Board adopted a so-called "compromise resolution" rescinding their 1926 agreement and offering to purchase the property for $40,000.00. In litigation instituted in the Circuit Court of Dade County by Grace Whiting Wicker and her husband, Cyrus French Wicker, against the Board in 1943 and finally concluded in 1947, it was adjudicated that any rights or claims of the Wickers against the Board arising out of the September 1926 contract were barred by the applicable statute of limitations. See Wicker v. Board of Public Instruction of Dade County, 1945, 156 Fla. 7, 22 So.2d 255; 1947, 159 Fla. 430, 31 So.2d 635.
*554 The decision of this court in 31 So.2d 635 was entered on August 1, 1947. On November 10, 1947, Cyrus French Wicker filed suit as executor of the estate of his deceased wife, Grace Whiting Wicker, in the Federal District Court  this time to recover the purchase price of $40,000.00 under the "compromise resolution" of May 9, 1928. The District Court sustained the Board's defenses of invalidity of the compromise resolution and the statute of limitations. Its judgment dismissing the suit was affirmed on appeal. Wicker v. Board of Public Instruction of Dade County, 5 Cir., 1950, 182 F.2d 764, 765. In its opinion, the Circuit Court of Appeals said: "We are of the further opinion that when this suit was filed, the offer had long ago lapsed and that there was no basis in law or in equity for plaintiff's suit." This decision was handed down on June 14, 1950.
On June 30, 1950, Mr. Wicker applied to the Probate Judge for leave to sell the subject property, and an order approving the sale was entered. On the same date, Mr. Wicker quitclaimed the subject property to J.A. Bechard and N.J. Fincke, the documentary stamps indicating a purchase price of $10,000.00. On August 4, 1950, Bechard and Fincke conveyed the property to the Board of Public Instruction of Dade County, the Board paying $19,000.00 for the property. Both of these deeds were duly recorded in the public records of Dade County.
On March 8, 1955, Mr. Wicker filed his final account as executor of his deceased wife's estate and applied for an order of distribution to him, as her sole heir, of the remaining assets of the estate. He listed the subject property as an asset of the estate. The order of distribution was entered as applied for.
By warranty deeds dated March 7, 1955, and March 10, 1955, duly recorded on March 14, 1955, and March 11, 1955, respectively, Mr. Wicker purported to convey to the Board the subject property, as executor of his wife's estate and as an individual. Each deed recited that the conveyance was made "for and in consideration of the Resolution of the Board of Public Instruction of Dade County, Florida, spread on the Minutes of the Minute Book # 6 dated May 9, 1928; and in conformity with the ORDER authorizing sale of following described real property in Probate Proceedings # 21949 Done and Ordered in Chambers by Circuit Judge acting for and in the absence of the County Judge, June 30, 1950 * * *", no other consideration being recited. A ten-cent documentary stamp was affixed to each deed.
One month later, on April 7, 1955, Mr. Wicker filed suits against the Board in the state and federal courts to recover a money judgment against it. He apparently based his claim on the deed he recorded the previous month and on the Board's compromise resolution of 1928 recited therein, although we find no copy of the complaint in the record here. Sometime thereafter (the exact time not appearing in the record) he approached the Board, through his attorney, and offered to drop his suits if the Board would quitclaim the property to him. The record does show, however, that in May of 1955, the Board's Supervisor of School Site Planning searched his records and those of the School Board Attorney and found no legal instruments or written documents disclosing that the Board had purchased the property. The search revealed only that in the 1943 to 1950 state and federal litigation referred to above, the Board had consistently taken the position that it had no interest in the land and did not claim any. He so advised the Board.
Upon the advice and recommendation of its Supervisor and its Attorney, made after a further investigation of the Board's records in January of 1956, the Board finally, on January 18, 1956, agreed to grant a quitclaim deed to Mr. Wicker and disclaim any interest in the subject property, with the understanding that Mr. Wicker would dismiss his suits with prejudice and at his own cost. The disclaimer was executed and filed for record and the suits were dismissed *555 pursuant to a stipulation that they had been "compromised and settled" by the parties. The quitclaim deed was subsequently executed and delivered to Mr. Wicker's attorney, but has not been recorded, pending the outcome of the instant suit.
Belatedly, then, the Board discovered that it was the record title owner of the property by virtue of its purchase thereof in 1950 from Bechard and Fincke, following Mr. Wicker's conveyance to them of his interest in the property. The instant suit was promptly filed on March 27, 1956, to rescind and cancel the Disclaimer and quitclaim deed and to enjoin Mr. Wicker from completing negotiations for the sale of the property to a third person. The complaint alleged that the instruments sought to be cancelled had been executed "without adequate consideration and under the mistake of fact that the plaintiff did not own the fee simple title to said property." It was alleged that Mr. Wicker contemplated transferring his purported interest in the property "either through mistake of fact or mistake of law, or by misrepresentation, scheme and design, to unjustly enrich himself to the detriment, irreparable injury and damage of the plaintiff."
As noted in our former opinion, a summary final decree in favor of the plaintiff Board was entered by the trial court, based upon the affidavits and exhibits revealing the above-recounted facts, filed in the cause by the parties.
The rationale of our former opinion was that the Board had no standing to obtain equitable relief by way of cancellation of instruments admittedly executed "through oversight and inadvertence." We relied on Willis v. Hillsborough County, 117 Fla. 1, 157 So. 29, 32, as authority for our decision. In that case, as well as in the instant case, the Board was guilty of some negligence. In the Willis case, however, the County Commissioners made no investigation whatsoever of their records or the property itself to determine the true status of the improvements on the property, even though "a little diligence" in this respect would have disclosed the fact of its ownership of the improvements. In the instant case, investigations of the Board's records were made in May of 1955 and again in January of 1956. In the Willis case the mistake relied upon as a ground for rescission related only to the adequacy of the price of the property sold, whereas in the instant case the mistake was as to the title of the property itself. Obviously, the Board in the instant case could not be charged with gross negligence, as could the County Commissioners in the Willis case; nor does the claim to equitable relief there made because of inadequacy of price make as strong an appeal to the equity court as does the claim here made, involving the loss of the entire property.
An additional factor in the instant case is that it involves a so-called "compromise and settlement" of the litigation initiated by Mr. Wicker. In Henderson v. Kendrick, 1921, 82 Fla. 110, 89 So. 635, 637, this court declined to follow the early English rule that forbearance to prosecute an invalid claim is under all circumstances an incompetent consideration, and said:
"Every day a compromise is effected on the ground that the party making it has a chance of succeeding in it, and if he bona fide believes he has a fair chance of success, he has a reasonable ground for suing, and his forbearance to sue will constitute a good consideration. When such a person forbears to sue he gives up what he believes to be a right of action, and the other party gets an advantage, and, instead of being annoyed with an action, he escapes from the vexations incident to it." (Emphasis added.)
In the circumstances shown by this record we question whether Mr. Wicker could have believed, in good faith, that he had a fair chance of prosecuting to a successful conclusion the suits filed by him in April 1955  since it would appear that the state and federal litigation conducted by him from 1943 to 1950, related above, would be *556 res judicata of any rights or claims he had against the Board arising out of the 1926 contract or 1928 compromise resolution, even if he hadn't divested himself in 1950 of all his right and title in and to the subject property.
But be that as it may, we think the lower court's decree may be sustained under the authority of several decisions by this court in cases involving rescission on the ground of negligent mistake. Thus, in Crosby v. Andrews, 1911, 61 Fla. 554, 55 So. 57, 63, suit was brought by church trustees to cancel a deed of conveyance of church property, a portion of which was not owned by the church and was included by mistake in the deed. In holding that the complaint stated a cause of action for rescission and cancellation even though it appeared that there was negligence on the part of the trustees in conveying that which they had no right to convey, this court said:
"A deed of conveyance may be rescinded or canceled for a negligent mistake of fact that is unilateral where the negligence is not a breach of legal duty, and the mistake is material and made under circumstances that render it inequitable for the other party to have the benefit thereof, even though he did not by commission or omission contribute to the mistake, and the parties were dealing at arm's length and on equal footing. * * * The carelessness of the trustees does not amount to a breach of a legal duty or bad faith towards the grantee, and could not reasonably have misled him; * * *."
Again, in Chappell v. Nalle, 1935, 119 Fla. 711, 160 So. 867, 868, in affirming an order overruling a demurrer to a complaint for cancellation of a satisfaction of a mortgage, this court said:
"We are conscious of the rule that a mistake arising solely from the complaining party's negligence will not be relieved against in a court of equity, but this rule is qualified by the doctrine that the mistake must be `wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty,' and even then each case of negligence must depend to a great extent on its own circumstances. Pomeroy's Equity Jurisprudence (4th Ed.) vol. 2, p. 1748."
And in Graham v. Clyde, Fla. 1952, 61 So.2d 656, 657, this court said again that "[i]f one's mistake is due to his own negligence and lack of foresight and there is absence of fraud and imposition, equity will not relieve him." (Emphasis added.) See also International Realty Associates v. McAdoo, 1924, 87 Fla. 1, 99 So. 117, 119, where it was said that "as in the case of specific performance, relief by way of cancellation lies within the sound discretion of the court, to be exercised according to what is reasonable and proper under the circumstances of each particular case; * * *".
A case from another jurisdiction very similar on its facts to the instant case is Chicago, St. P., M. & O.R. Co. v. Washburn Land Co., 1917, 165 Wis. 125, 161 N.W. 358, 361. There, a quiet-title suit was filed against the railroad company and others by the Washburn Land Co. The railroad company referred the matter to its legal department, which investigated its records and found no record of any interest in the land. The railroad company then executed a release and a quitclaim deed of the property to the Land Co., and, upon discovering that it actually owned an interest therein, thereafter brought suit to cancel the deed on the ground of mistake. The Wisconsin Supreme Court held that the lower court was not in error in failing to find that the officers of the railroad company were inexcusably negligent in executing the release and quitclaim deed. The court said:
"It is well settled that equity, in a proper case, will relieve against mistake. The instant case is not one of settlement or compromise of a disputed right or claim. It is a clear case of *557 mistake, and a mistake on the part of the plaintiff here which is excusable."
For other cases involving rescission on the ground of negligent mistake, see 59 A.L.R. at pages 821 et seq.
Upon reconsideration of all the circumstances here, we have concluded that the lower court in the instant case did not err in entering a summary decree in favor of the Board, as against the contention that its negligence was a bar to such relief. In sum, Mr. Wicker recorded a deed (two, in fact) purporting to convey to the Board property that he did not own "for and in consideration of" a compromise resolution that had been declared invalid and unenforceable in 1950 by a federal court in litigation instigated by him and, even, conducted by him as an attorney (see the listing of counsel in the report of the decision on appeal in 182 F.2d 764); and he thereafter filed suit thereon without disclosing material facts that, if known by the Board, would have affected their action in the matter. Although ostensibly for a money judgment against the Board (described by Mr. Wicker as a civil suit for "damages" against the Board), his real intention was to "recover the land", either with or without litigation, as shown by his affidavit stating that he employed an attorney and agreed to pay him a certain fee "if he [the attorney] recovered said land without litigation" and a higher fee "if he got this land as a result of litigation."
It may be that Mr. Wicker, an elderly gentleman, believed honestly and sincerely that he still retained some equitable right to the land superior to the legal title of the Board, and that he was justified in seeking to enforce that right in the manner here attempted. But whether innocently or fraudulently, no more ingenious plan to achieve his purpose could have been conceived than the one adopted by him. Whether designedly or artlessly, the recitals in the deed and, presumably, the allegations of the complaint, were all calculated to and did lead the Board down the "wrong alley" in their investigation of their interest in the subject matter of his suit. The Board's Supervisor and Attorney both came up with the expected answer: That, historically, the Board had always disclaimed any right to or liability for the subject property arising out of the 1926 contract and 1928 resolution and had successfully resisted the attempts to force them to purchase and pay for the property under such contract and resolution in the 1943-to-1950 litigation with the Wickers. In these circumstances, we think that Mr. Wicker cannot be heard to say that the Board was inexcusably negligent because its officers or employees failed to check the County's public records as to the exact status of the title.
Nor can we sustain Mr. Wicker's contention that the Board's suit should fail because there was no offer of restoration and because he cannot be returned to the status quo. No offer of restoration was necessary because the Board had received nothing of value that could be restored. And Mr. Wicker cannot be heard to complain that he cannot be placed in status quo because he will not have the benefit of an inequitable bargain.
Nor do we think Mr. Wicker can complain because the lower court failed to order the reinstatement of the suits voluntarily dismissed by him in consideration of the quitclaim deed and Disclaimer executed by the Board and cancelled by the decree affirmed herein. As noted above, only by adopting a most charitable approach to Mr. Wicker's suits can it be assumed that they were filed in good faith; and, even if they were, it is perfectly clear that the issues therein made were long ago adjudicated adversely to Mr. Wicker's contentions. See Wicker v. Board of Public Instruction of Dade County, supra, 22 So.2d 255, 31 So.2d 635; Wicker v. Board of Public Instruction, supra, 182 F.2d 764. It may be that, technically, the lower court should have ordered the reinstatement of Mr. Wicker's suits when it decreed the cancellation of the quitclaim deed and Disclaimer that were the consideration for their dismissals; *558 but a court of equity is a court of conscience; it "should not be shackled by rigid rules of procedure and thereby preclude justice being administered according to good conscience." Degge v. First State Bank of Eustis, 1941, 145 Fla. 438, 199 So. 564, 565. Since no useful purpose would be served by ordering the reinstatement of suits having only a nuisance value, we have the opinion that the lower court, in equity and good conscience, was not required to do so.
For the reasons stated, we recede from our former opinion and now hold that the decree of the lower court should be and it is hereby
Affirmed.
TERRELL, C.J., O'CONNELL, J., and HARRIS, Circuit Judge, concur.
THOMAS, DREW and THORNAL, JJ., dissent and adhere to original opinion.