T.C. Memo. 2000-77

UNITED STATES TAX COURT

DIANA T. VISCO, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23336-97.                    Filed March 7, 2000.

Diana T. Visco, pro se.

Carol-Lynn E. Moran, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  Respondent determined a deficiency of $37,114
in petitioner's 1992 Federal income tax and an addition to tax
pursuant to section 6651(a)(1)[1] of $495.

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

The issues for decision are: (1) Whether petitioner is required to include $138,799.18 in compensation for services, backpay, and interest on backpay in her 1992 gross income; (2) whether petitioner is required to include a $182 State income tax refund and $15 of interest in her 1992 gross income; and (3) whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to timely file her 1992 Federal income tax return.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Philadelphia, Pennsylvania, at the time she filed her petition.

Petitioner was a reading specialist for the School District of Cheltenham Township (district) until June of 1989. In June of 1989, the district asked petitioner not to return to work the following school year, and in August of 1989, she was suspended from her position with the district. In November of 1989, the district's school board (board) voted to dismiss petitioner for willfully violating school laws when she failed to follow directives of superiors. Petitioner appealed the board's decision to dismiss her. On January 24, 1990, the secretary of education for the Commonwealth of Pennsylvania (secretary) reversed the board's decision and ordered the district to

reinstate petitioner to the position which she had held during the 1988-89 school year, or a comparable position, with backpay plus interest at 6 percent per annum.  The board appealed the secretary's order, and on June 3, 1991, the Commonwealth Court of Pennsylvania (Commonwealth Court) affirmed the secretary's decision.

The district employed petitioner from September of 1991 until June of 1992.  As compensation for services provided by petitioner during 1992, she received $38,223.86.[2]  Petitioner cashed the checks representing this compensation.  Petitioner did not return to work with the district after June of 1992.

As a result of the above proceedings regarding petitioner's dismissal, the district attempted to pay petitioner backpay for the 1989-90 and 1990-91 school years.  On February 25, 1992, the district issued two checks payable to petitioner in the amounts of $24,601.74 and $26,328.08.  These checks represented $95,189.92 in backpay and interest on backpay after payroll deductions.  However, petitioner never cashed these checks, and they were subsequently voided by the district.  On December 3, 1992, the Commonwealth Court ordered the district to pay

---

[2]This represents total compensation for services before payroll deductions.

petitioner $111,708.44.  The $111,708.44 amount was computed as

follows:

| | |
|---|---|
| 1989-90 salary | [1]$55,634.51 |
| 1990-91 salary | [2]52,349.93 |
| Additional interest | [3]524.58 |
| Reimbursement for benefits | [4]3,195.84 |
|   Total | [5]111,704.86 |

[1]This amount consists of a base salary of $50,500 less interim earnings of $871.15, plus interest to Feb. 25, 1991, of $6,005.66.

[2]This amount consists of a base salary of $54,300 less interim earnings of $4,968, plus interest to Feb. 25, 1992, of $3,017.93.

[3]There is a $12,794.52 difference between the $107,984.44 ($55,634.51 + 52,349.93) in backpay and interest on backpay that the district ultimately paid petitioner and the $95,189.92 in backpay and interest on backpay that the district offered her on Feb. 25, 1992.  The $524.58 in additional interest represents 6 percent interest on $12,794.52.

[4]This amount constitutes reimbursement for medical and dental benefits that petitioner did not receive while terminated.

[5]There is a small difference of $3.58.

The district issued two checks to petitioner, each dated

December 21, 1992, totaling $59,079.78.  These checks represented

backpay and interest on backpay of $108,509.02 after payroll

deductions.[3]  The district also issued a check to petitioner

dated December 21, 1992, in the amount of $3,195.84 as

reimbursement for benefits petitioner had not received.  A

courier presented the checks to petitioner on December 28, 1992.[4]

_____

[3]A portion of the payroll deductions consisted of $31,042.86 in Federal income taxes.

[4]However, the record is not clear whether petitioner also received the third check for $3,195.84 on Dec. 28, 1992.  It is irrelevant to our inquiry since the check for $3,195.84 was not included in the Form W-2, Wage and Tax Statement, for 1992 and is not included in respondent's determination of unreported income.

It is clear from the record that the two checks for backpay and interest on backpay were delivered to petitioner on December 28, 1992. Petitioner took the checks and called the district's attorney and told him she was refusing the checks. Petitioner then returned the checks to the courier.

The district mailed petitioner a Form W-2, Wage and Tax Statement, showing taxable income of $138,799.18 and $35,134.61 in withholdings for Federal income tax purposes. Taxable income was based on the following:

| | |
|---|---|
| 13 biweekly paychecks of $2,248.46 | $29,229.98 |
| 6/30/92 paycheck | [1]8,993.88 |
| 1989-90 salary | 55,634.51 |
| 1990-91 salary & additional interest | [2]52,874.51 |
|   Total State wages | 146,732.88 |
| Less: Payments to Pennsylvania School<br>      Employees Retirement System | (7,933.70) |
|   Total taxable wages | [3]138,799.18 |

[1]At the end of each school year, teachers are given a summer payoff which is a total of four biweekly paychecks.

[2]This amount consists of $52,349.93 in salary and $524.58 in additional interest.

[3]The $3,195.84 reimbursement for medical and dental benefits not received while terminated was not included in the Form W-2 for 1992.

Additionally, petitioner received a $182 State income tax refund and $15 of interest during taxable year 1992.

On April 15, 1993, petitioner filed a Form 4868, "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return". Petitioner questioned the accuracy of the Form W-2 that she had received from the district. On the basis of advice received from the Internal Revenue

Service's (IRS) Taxpayer Service, petitioner filed a Form 4852, "Substitute for Form W-2, Wage and Tax Statement or Form 1099R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRA's, Insurance Contracts, etc."  Petitioner sent the Form 4852 to the IRS's Philadelphia Criminal Investigation Unit in June of 1993.  Petitioner did not provide details of any wages or taxes withheld on the substitute Form W-2 because she was uncertain as to which items of income to include in her calculations.  However, petitioner asserted on the substitute Form W-2 that her employer's Form W-2 does not appear to be valid because:

> (1) Money reported as earnings may actually be monies illegally withheld from taxpayer's retirement fund during the years of credited service (1963-1992);
>
> (2) If, money reported as earnings, constitute employer contractual liability for wrongful discharge of taxpayer, then amount entered is inaccurate.  Employer obligation at 6 per cent annum exceeds the amount entered in Box 10.[5]
>
> (3) Monies issued to taxpayer identified as payroll checks 95799[6] and 96800[7] dated December 21, 1992 are not constructively received because they are

---

[5]Wages, tips and other compensation.

[6]The payroll check for $29,068.18 represented backpay and interest on backpay of $55,634.51 after payroll deductions for the 1989-90 school year.

[7]Petitioner appears to be referring to check no. 95800, not 96800.  Check no. 95800 is a payroll check for $30,011.60, which represented backpay and interest on backpay of $52,874.51 after payroll deductions for the 1990-91 school year.

inaccurately identified as retirement[8] salary. Taxpayer has not filed any application for retirement allowance. Moreover, these checks serve to validate a grossly inaccurate retirement fund. Consequently, the taxpayer does not know how to complete tax filing for the 1992 tax year and kindly requests a thorough investigation into this matter. * * *

The substitute Form W-2 was accompanied by a letter requesting a criminal investigation into the matter. In the letter, petitioner stated she wished to complete her 1992 Federal tax return in a manner that would allow her to preserve her legal rights.

On August 13, 1993, petitioner filed a Form 2688, "Application for Additional Extension of Time to File U.S. Individual Income Tax Return". Petitioner provided the following explanation for her request:

I requested a criminal investigation of monies reported on my 1992 W-2. I have not received any information about the information given on Form 4852 dated June 17, 1993 and [sic] am uncertain about how to file my 1992 tax return.

On October 4, 1993, the Commonwealth Court ordered the district to pay the sum of $62,275.62[9] into the Commonwealth

[8]Neither of the paychecks nor the accompanying payment stubs identified the payment as retirement salary. The only references to retirement salary were explanatory notes on the payment stubs indicating that the payroll deductions taken from petitioner's pay for retirement benefits are based on her retirement salary.

[9]The difference between the $111,708.44 that the Commonwealth Court ordered the district to pay petitioner on Dec. 3, 1992, and the $62,275.62 that the Commonwealth Court ordered

(continued...)

Court since petitioner had refused to keep the two checks presented to her on December 28, 1992. The district paid $62,275.62 into the Commonwealth Court on March 10, 1994.

On March 20, 1995, the IRS sent a Form 4598, "Form W-2, or 1099 Not Received or Incorrect", to the district. The Form 4598 indicated that the district's Form W-2 differed from petitioner's records. The district responded on the back of the same form by indicating that petitioner's Form W-2 was mailed to her in January of 1993.

On September 28, 1995, the Commonwealth Court opened a bank account with Dauphin Deposit Bank and Trust Co. for the benefit of petitioner. In order for petitioner to withdraw cash from the account, all that she was required to do was to write a letter to the Commonwealth Court requesting access to the funds.

By letter dated October 3, 1995, the Commonwealth Court notified petitioner that it had transferred the $62,275.62 to an interest-bearing account in her name. On August 28, 1997, respondent mailed a statutory notice of deficiency to petitioner for the taxable year 1992.

---

[9](...continued)
the district to pay into the Commonwealth Court on Oct. 4, 1993, was the result of payroll withholdings. The checks for backpay and interest had net amounts of $29,068.18 and $30,011.60. Thus, $29,068.18 plus $30,011.60 plus $3,195.84 (reimbursement for medical benefits not received while terminated) equals $62,275.62.

As of the date of trial, petitioner had not contacted the Commonwealth Court requesting access to the $62,275.62 that the district had deposited with Dauphin Deposit Bank and Trust Co. for her benefit. Petitioner has never filed a Federal income tax return for the taxable year 1992.

## OPINION

### Gross Income

The first issue is whether petitioner is required to include $138,799.18 in compensation for services, backpay, and interest on backpay in her 1992 gross income. Gross income includes income from whatever source derived, including compensation for services. See sec. 61(a)(1).

A. Compensation for Services Performed During 1992

At trial, petitioner acknowledged that she received and cashed paychecks for services performed in 1992. Since compensation for services rendered is includable in gross income and petitioner does not dispute that she received it, we hold that petitioner is required to include $38,223.86 of wages for services that she performed in 1992 in her 1992 gross income.

B. Backpay and Interest on Backpay

With regard to the backpay and interest on backpay, petitioner appears to argue, in the alternative, that: She never constructively received these amounts; the money was a damage

award in a tortlike action and not backpay; and the income is an unauthorized withdrawal from her pension plan.

The amount of any item of gross income shall be included in the taxable year in which it is actually or constructively[10] received by the taxpayer. See sec. 451(a); sec. 1.451-1(a), Income Tax Regs. Amounts owed to cash basis taxpayers are not to be included in the taxpayers' income unless it appears that the money was available to them, the payor was able and ready to pay them, their right to receive the money was not restricted, and their failure to receive the cash resulted from the exercise of their own choice. See Basila v. Commissioner, 36 T.C. 111, 115-116 (1961).

The district made two attempts to pay petitioner for the backpay and interest on backpay during 1992. Checks were initially issued to petitioner in February of 1992 and subsequently voided by the district because petitioner did not

---

[10]Sec. 1.451-2(a), Income Tax Regs., defines the term "constructive receipt" as follows:

> (a) General rule. Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

cash the checks.  The district made another attempt to pay petitioner in December of 1992.  This time, petitioner took the checks and called the district's attorney and told him she was refusing the checks.  Petitioner then returned the checks to the courier.  We conclude that the money was available[11] to petitioner, and the district was able and willing to pay her.

Nevertheless, petitioner characterized the district's attempt to deliver the checks as a settlement offer, which she rejected.  We disagree.  Before delivering the checks, the Commonwealth Court established the exact amount due petitioner for backpay, interest on backpay, and benefits.  The district was not negotiating; it was complying with the Commonwealth Court's December 3, 1992, order.  Consequently, when the courier delivered the checks to petitioner on December 28, 1992, she had the right to a specific amount of money and the power to receive that money.

Petitioner argues that a substantial restriction existed on the money when the Commonwealth Court deposited the funds with Dauphin Deposit Bank and Trust Co. for her benefit.  However, that account was established for petitioner's benefit in 1995, and our inquiry turns on whether a substantial restriction

---

[11]"A check in the hands of a taxpayer ordinarily means that the funds are immediately available."  Walter v. United States, 148 F.3d 1027, 1029 (8th Cir. 1998).

existed in 1992.  When the checks were delivered to petitioner in December of 1992, they were payable only to petitioner, and none of the documents and orders involved in the various proceedings contained any indication of any condition or limitation imposed upon petitioner's receipt of the checks.  Petitioner had unfettered control over the checks in 1992 but returned them.  Thus, the money was not restricted, and petitioner's failure to benefit from the amounts represented by the checks resulted from the exercise of her own choice.  Therefore, we conclude that petitioner constructively received the backpay and interest on backpay in 1992.[12]

---

[12]Petitioner had $31,042.86 in Federal income taxes withheld from the two checks issued to her for backpay and interest on backpay.  Assuming arguendo that petitioner was correct and that she did not constructively receive the checks for backpay and interest on backpay in 1992, petitioner would have overpaid her 1992 Federal income taxes.

The Tax Court has jurisdiction to award to a taxpayer a refund of overpaid taxes if the Commissioner issued the notice of deficiency within the later of 2 years after the tax was paid or 3 years after the return was filed.  See secs. 6511(b)(2)(A) and (B) and 6512(b)(3)(B); Commissioner v. Lundy, 516 U.S. 235, 241-242 (1996).  The 2-year period applies (and the 3-year period does not) if the taxpayer did not file his or her income tax return before the Commissioner issued a notice of deficiency for that year.  See secs. 6511(b)(2)(B) and 6512(b)(3); Commissioner v. Lundy, supra at 243.  Petitioner did not file a tax return for 1992.

Respondent mailed the notice of deficiency on Aug. 28, 1997.  We may order a refund of any overpayments petitioner made within the 2 years preceding Aug. 28, 1997.  Petitioner's payments of taxes for 1992 were made by the district through withholding.
(continued...)

Petitioner's next argument is that "The totality of the circumstances in this matter points to the nature of the action as a tortlike action and the nature of the money as damages[13] and not backpay." We disagree.

Gross income does not include the amount of any damages received on account of personal injuries or sickness. See sec. 104(a)(2).[14] "The term 'damages received (whether by suit or agreement)' means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or

---

[12](...continued)
Withheld income taxes are deemed paid on Apr. 15 of the year following the taxable year. See sec. 6513(b)(1); Baral v. United States, __ U.S. __, 68 U.S.L.W. 4119 (Feb. 22, 2000). Thus, petitioner is deemed to have paid income tax for 1992 on Apr. 15, 1993, which is more than 2 years before Aug. 28, 1997.

If petitioner did not constructively receive the income for backpay and interest on backpay in 1992, then she would have overpaid her 1992 taxes but would be time barred to claim credit for any overpayment. Furthermore, when petitioner actually or constructively receives the $62,275.62 plus interest from the interest-bearing account with Dauphin Deposit Bank and Trust Co., she will presumably have received taxable income, owe tax on that income, and might be unable to get any credit for the taxes previously paid.

[13]Petitioner seems to be arguing that the backpay was really a damage award and thus under sec. 104(a) is excluded from gross income.

[14]The Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605(a), 110 Stat. 1838, amended sec. 104(a)(2) to limit the exclusion, inter alia, to "personal physical injuries or physical sickness." The amendment does not apply to damages collected before the date of its enactment and has no bearing here.

through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs. In order for damages to be excludable from gross income under section 104(a)(2), the taxpayer must demonstrate that: (1) The underlying cause of action is based upon tort or tort type rights, and (2) the damages were received on account of personal injuries or sickness. See Commissioner v. Schleier, 515 U.S. 323, 337 (1995).

The record in this case shows that petitioner's dispute with the district was over her dismissal for failure to comply with the directives of her superiors. There is nothing in this record that would indicate that the dispute involved a tortlike action or a personal injury. As stated in the opinion of the secretary of education:

> The District's dismissal action is based upon a conclusion that Visco persistently and willfully violated the school laws when she failed to comply with requests made by the Principal, Assistant Superintendent and Superintendent. As correctly pointed out by Visco, the District's action involves three elements, all of which must be satisfied in order for us to uphold the District's action. The district has the burden of proving by substantial evidence that Visco's actions were 1) persistent; 2) willful; and 3) violations of school law. "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." * * *

Recovery of backpay in this context does not fall within the exclusion of section 104(a)(2) because it does not satisfy the

critical element of being "on account of personal injury or sickness." Commissioner v. Schleier, supra at 330. In the instant case, the record is clear that the payments made to petitioner were for backpay and interest on backpay. We conclude that the income from backpay and interest on backpay does not fall within the exclusion from income set forth in section 104(a)(2).

Petitioner's final argument is that the money received from the district was an unauthorized withdrawal from her pension. Petitioner bears the burden of proof. See Rule 142(a). Other than petitioner's testimony that she was concerned that the payment for backpay offered by the district could have been an unauthorized withdrawal from her retirement fund, she offered no proof that the money was withdrawn from the Pennsylvania School Employees Retirement System. All of the other evidence supports a conclusion that none of the amounts in issue constituted withdrawals from petitioner's retirement fund. In fact, petitioner's 1992 Form W-2 reflects $7,933.70 in contributions by her to the pension plan during the year. Thus, we conclude that petitioner's assertion lacks merit.

C. State Income Tax Refund and Interest Income

Petitioner stipulated that she received a $182 State income tax refund in 1992 that she had claimed as a deduction in prior years. Petitioner offered no evidence that respondent's

determination is in error.  Petitioner also stipulated that she received $15 of interest in 1992.  We sustain respondent's determination regarding these items.

Section 6651(a)(1) Addition to Tax

The final issue is whether petitioner is liable for the addition to tax under section 6651(a)(1) for 1992.  Petitioner contends that she did not have enough information to file a return because she could not verify that part of the income reflected on her 1992 Form W-2 represented backpay and interest on the backpay rather than an unauthorized withdrawal from her retirement fund.

It is well settled that in order to avoid the addition to tax prescribed by section 6651(a), petitioner bears the burden of proving both (1) that the failure did not result from "willful neglect," and (2) that the failure was "due to reasonable cause." Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985).  "Willful neglect" denotes "a conscious, intentional failure or reckless indifference."  United States v. Boyle, supra at 245.  "Reasonable cause" correlates to "ordinary business care and prudence".  Id. at 246 n.4; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioner was aware of her need to file a return but questioned the information on the Form W-2 that she received from the district.  Petitioner contacted the district but was unable

to satisfy her concerns.  Petitioner contacted the IRS and on the basis of the advice of the IRS's Taxpayer Service, timely filed a Form 4868, "Application for Automatic Extension of Time To File U.S. Individual Income Tax return" for 1992.  Petitioner again attempted to obtain information from the district but was not satisfied.  Petitioner contacted the IRS again and was advised to contact the IRS's Criminal Investigation Unit and to file a Form 4852, "Substitute for Form W-2, Wage and Tax Statement or Form 1099R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRA's, Insurance Contracts, etc."

When petitioner contacted the Service's Criminal Investigation Unit, she indicated that she wanted to complete her 1992 Federal tax return in a manner that would allow her to preserve her rights but that she did not know how to complete her tax filing for 1992.  Petitioner requested an investigation into the matter.

In August of 1993, petitioner filed a Form 2688, "Application for Additional Extension of Time To File U.S. Individual Income Tax Return" and notified the IRS that she still had not received the information that she previously requested. As a result, petitioner asserted that she did not know how to file her return.

The IRS sent Form 4598, "Form W-2, or 1099 Not Received or Incorrect", to the district indicating that petitioner's records

differed from the district's. That letter was sent nearly 2 years after petitioner had advised the IRS of her concerns when she filed Form 2688 for an additional extension of time to file her 1992 tax return. The district's response to the IRS indicated only that the district mailed petitioner a Form W-2 in January of 1993.

Petitioner had $35,134.61 in Federal income taxes withheld from her paychecks in 1992. Respondent's notice of deficiency indicates that petitioner's correct tax liability is $37,114. As of the date of trial, petitioner had not contacted the Commonwealth Court requesting access to the $62,275.62 that the district deposited with Dauphin Deposit Bank and Trust Co. for her benefit. In other words, 95 percent of petitioner's Federal tax liability as determined by respondent was paid in 1992, and as of 1999, she still had not requested access to the funds deposited on her behalf for backpay and interest on backpay because of her confusion about the nature of these funds. We think petitioner was sincere in her confusion about the nature of the backpay that had been awarded to her. While petitioner was mistaken about the nature of the backpay, she subjectively believed that her concerns were real, she was forthcoming with the IRS about her confusion and she asked for assistance, and she did the best that she was personally capable of doing to comply with the law.

Consequently, we do not sustain respondent's determination that petitioner is liable for an addition to tax pursuant to section 6651(a)(1).

<u>Decision will be entered for respondent with respect to the deficiency and for petitioner with respect to the addition to tax under section 6651(a)(1).</u>