# BARAL *v.* UNITED STATES

No. 98–1667.   Argued January 18, 2000—Decided February 22, 2000

THOMAS, J., delivered the opinion for a unanimous Court.

*Walter J. Rockler* argued the cause for petitioner. With him on the briefs were *Julius Greisman* and *Thomas Klein.*

*Kent L. Jones* argued the cause for the United States. With him on the brief were *Solicitor General Waxman, Assistant Attorney General Argrett, Deputy Solicitor General Wallace, Gilbert S. Rothenberg,* and *Charles Bricken.*

JUSTICE THOMAS delivered the opinion of the Court.

Internal Revenue Code § 6511(b)(2)(A) imposes a ceiling on the amount of credit or refund to which a taxpayer is entitled as compensation for an overpayment of tax: "[T]he amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." 26 U. S. C. § 6511(b)(2)(A). We are called upon in this case to decide when two types of remittance are "paid" for purposes of this section: a remittance by a taxpayer of estimated income tax, and a remittance by a taxpayer's employer of withholding tax. The plain language of a nearby Code section, § 6513(b), provides the answer: These remittances are "paid" on the due date of the taxpayer's income tax return.

I

The relevant facts are not disputed. Two remittances were made to the Internal Revenue Service toward peti-

tioner David H. Baral's income tax liability for the 1988 tax year. The first, a withholding of $4,104 from Baral's wages throughout 1988, was a garden-variety collection of income tax by the employer, see § 3402. The second, an estimated income tax of $1,100 remitted in January 1989, was sent by Baral himself out of concern that his employer's withholding might be inadequate to meet his tax obligation for the year, see § 6654. In the ordinary course, Baral's income tax return for 1988 was due to be filed on April 15, 1989. Though he applied for and received an extension of time until August 15, Baral missed this deadline; he did not file the return until nearly four years later, on June 1, 1993. The Service, on July 19, 1993, assessed the tax liability reported on this belated return.

On the return, Baral claimed that he (and his employer on his behalf) had remitted $1,175 more with respect to the 1988 taxable year than he actually owed. Baral requested that the Service apply this excess as a credit toward his outstanding tax obligations for the 1989 taxable year. The Service denied the requested credit. It did not dispute that Baral had timely filed the request under the relevant filing deadline—"within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." § 6511(a); see § 6511(b)(1). But the Service concluded that the claim exceeded the ceiling imposed by § 6511(b)(2)(A). That provision states that "the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." *Ibid.*; see generally *Commissioner* v. *Lundy*, 516 U. S. 235, 240 (1996) (explaining that § 6511 contains two separate timeliness provisions: (1) § 6511(b)(1)'s filing deadline and (2) § 6511(b)(2)'s ceilings, which are defined by reference to that provision's "look-back period[s]"). Since Baral had filed his return on June 1, 1993, and had earlier received a 4-month extension from the initial

due date, the relevant look-back period under § 6511(b)(2)(A) extended from June 1, 1993, back to February 1, 1990 (*i. e.,* three years plus four months). According to the Service, Baral had paid no portion of the overpaid tax during that period, and so faced a ceiling of zero on any allowable refund or credit.

Baral then commenced the instant suit for refund in Federal District Court. That court sustained the Service's position and granted summary judgment in its favor. The Court of Appeals affirmed. App. to Pet. for Cert. A–1, judgt. order reported at 172 F. 3d 918 (CADC 1999). The Court of Appeals looked to § 6513(b)(1), which states that amounts of tax withheld from wages "shall . . . be deemed to have been paid by [the taxpayer] on the 15th day of the fourth month following the close of his taxable year," and to § 6513(b)(2), which makes similar provision for amounts submitted as estimated income tax, and concluded that, under these subsections, both of the remittances at issue were "paid" on April 15, 1989. Accord, *e. g., Dantzler* v. *United States,* 183 F. 3d 1247, 1250–1251 (CA11 1999) (estimated income tax); *Ertman* v. *United States,* 165 F. 3d 204, 207 (CA2 1999) (same); *Ehle* v. *United States,* 720 F. 2d 1096, 1096–1097 (CA9 1983) (withholding from wages). In view of apparent tension between this approach and a decision of the Court of Appeals for the Fifth Circuit, *Ford* v. *United States,* 618 F. 2d 357, 360–361, and n. 4 (1980) (suggesting that a remittance respecting any sort of tax is "paid" under § 6511 only when the Service assesses the tax liability), we granted certiorari, 527 U. S. 1067 (1999).

## II

The parties renew before us the contentions advanced below. The Government submits that §§ 6513(b)(1) and (2) unequivocally provide that the two remittances at issue were "paid" on April 15, 1989, for purposes of § 6511(b)(2)(A), so that they precede the look-back period, which, as noted, commenced on February 1, 1990. Baral, on the other hand, urges that a tax cannot be "paid" within the meaning of

§ 6511(b)(2)(A) until the tax liability is assessed (*i. e.*, the value of the liability is definitively fixed). According to Baral, the requisite assessment might be made either when the taxpayer files his return (here June 1, 1993) or when the Service, under § 6201, formally assesses the liability (here July 19, 1993), though he seems to prefer the latter date. See Brief for Petitioner 9 ("Payment of the income tax . . . occurred at the earliest on June 1, 1993, when the amount of that tax first became known, and more precisely on July 19, 1993, when the income tax was assessed").

We agree with the Government that §§ 6513(b)(1) and (2) settle the matter. We set out these provisions in full:

"(b) Prepaid income tax

"For purposes of section 6511 or 6512—

"(1) Any tax actually deducted and withheld at the source during any calendar year under chapter 24 shall, in respect of the recipient of the income, be deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31.

"(2) Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return)."

Subsection (1) resolves when the remittance of withholding tax by Baral's employer was "paid": Since Baral is a calendar year taxpayer, the $4,104 withheld from his wages during the 1988 calendar year was "paid" on April 15, 1989. Subsection (2) determines when Baral's remittance of estimated income tax was "paid": Since the referenced § 6012 together with § 6072(a) requires that a calendar year taxpayer like Baral file his income tax return on the April 15th following the close of the calendar year, the $1,100 remitted as an estimated income tax in respect of Baral's 1988 tax liability was

likewise "paid" on April 15, 1989. And both of these statu-
torily defined payment dates apply "[f]or purposes of section
6511," the provision directly at issue in this case. This
means that, under § 6511(b)(2)(A), both remittances at issue
(the withholding and the estimated income tax) fall before,
and hence outside, the look-back period, which commenced
on February 1, 1990. Because neither these remittances nor
any others were "paid" within the look-back period (Febru-
ary 1, 1990, to June 1, 1993), the ceiling on Baral's requested
credit of $1,175 is zero, and the Service was correct to deny
the requested credit.

Baral disputes this reading of § 6513(b). He claims that
§§ 6513(b)(1) and (2) establish a "deemed paid" date for pay-
ment of *estimated* tax and *withholding* tax, but in no sense
prescribe when the *income* tax is "paid," which is the crucial
inquiry under § 6511(b)(2)(A). According to Baral, withhold-
ing tax and estimated tax are taxes in their own right (sepa-
rate from the income tax), and are converted into income tax
only on the income tax return. (On this view, payment of
the *income* tax occurred no earlier than June 1, 1993, when
Baral filed the return.) This reading is evident, he says,
from the significance that the Treasury Regulations place on
the filing of the return, see 26 CFR § 301.6315-1 (1999) ("The
aggregate amount of the payments of estimated tax should
be entered upon the income tax return for such taxable year
as payments to be applied against the tax shown on such
return"); § 301.6402-3(a)(1) (providing that "in the case of an
overpayment of income taxes, a claim for credit or refund of
such overpayment shall be made on the appropriate income
tax return"), and from the fact that the Code's provisions
regarding withholding and estimated tax are found in differ-
ent subtitles (C and F, respectively) from the provisions gov-
erning income tax (A).

We disagree. Withholding and estimated tax remittances
are not taxes in their own right, but methods for collecting
the income tax. Thus, § 31(a)(1) of the Code provides that

amounts withheld from wages "shall be allowed to the recipient of the income as a credit against the [income] tax," and § 6315 states that "[p]ayment of the estimated income tax, or any installment thereof, shall be considered payment on account of the income taxes imposed by subtitle A for the taxable year." Similarly, one of the regulations cited by Baral explains that a remittance of estimated income tax "shall be considered payment *on account of the income tax* for the taxable year for which the estimate is made." 26 CFR § 301.6315–1 (1999) (emphasis added). Baral's reading fails, moreover, to give any meaning to 26 U. S. C. § 6513. That section exists "[f]or purposes of section 6511," and § 6511 concerns credits and refunds, which result only when the aggregate of remittances (such as withholding tax and estimated income tax) *exceed* the tax liability, see § 6401. Thus, the concepts of credit or refund have no meaning as applied to Baral's notion of withholding taxes and estimated taxes as freestanding taxes. Not surprisingly, the caption to § 6513(b) describes withholding and estimated income tax remittances as "[p]repaid income tax."

Taking a more metaphysical tack, Baral contends that income tax is "paid" under § 6511(b)(2)(A) only when the income tax is assessed—here, June 1 or July 19, 1993, see *supra,* at 434–435—because the concept of payment makes sense only when the liability is "defined, known, and fixed by assessment," Brief for Petitioner 9. But the Code directly contradicts the notion that payment may not occur before assessment. See § 6151(a) ("[T]he person required to make [a return of tax] shall, *without assessment* or notice and demand from the Secretary, *pay* such tax . . . at the time and place fixed for filing the return" (emphasis added)); § 6213(b)(4) ("Any amount *paid* as a tax or in respect of a tax *may be assessed upon the receipt of such payment*" (emphasis added)). Nor does Baral's argument find support in our decision in *Rosenman* v. *United States,* 323 U. S. 658 (1945), where we applied § 6511's predecessor to a remittance of esti-

mated estate tax. To be sure, a part of our opinion seems to endorse petitioner's view that payment only occurs at assessment:

> "It is [the] erroneous assessment that gave rise to a claim for refund. Not until then was there such a claim as could start the time running for presenting the claim. In any responsible sense payment was then made by the application of the balance credited to the petitioners in the suspense account . . . ." *Id.*, at 661.

But the remittance in *Rosenman,* unlike the ones here, was not governed by a "deemed paid" provision akin to § 6513, and we therefore had no occasion to consider the implications of such a provision for determining when a tax is "paid" under the predecessor to § 6511. See *ibid.* (noting that "no extraneous relevant aids to construction have been called to our attention"). Moreover, if the quoted passage had represented our holding, we would have broadly rejected the Government's argument that payment occurred when the remittance of estimated estate tax was made, instead of rejecting the argument, as we did, only because it was not in accord with the "tenor" of the "business transaction," *id.*, at 663.[1]

We observe, finally, that Baral's position—to the extent he submits that payment occurs only at the Service's assessment—would work to the detriment of taxpayers who timely file their returns and claim a refund or credit as compensa-

---

[1] Central to our analysis in this regard was a concern that the Service should not be able to treat the same remittance as a *payment* for statute of limitations purposes—disadvantaging the taxpayer by decreasing the time in which a refund claim could be filed—and as a *deposit* for purposes of accrual of interest on overpayments—disadvantaging the taxpayer by starting the accrual of interest only at assessment. *Rosenman,* 323 U. S., at 662–663. Indeed, we suggested that an amendment to the Code disapproving of the Service's treatment of remittances as deposits for interest purposes might change the analysis. *Id.,* at 663 (citing Current Tax Payment Act of 1943, § 4(d), 57 Stat. 140) (presently codified at 26 U. S. C. § 6401(c)).

tion for an overpayment. The Service will not always assess the taxpayer's liability immediately upon receiving the return; the Service generally has three years in which to do so, see 26 U. S. C. § 6501(a) (1994 ed., Supp. III). The Code does allow for payment of interest to the taxpayer on overpayments once the return has been filed and the tax paid, 26 U. S. C. § 6611 (1994 ed. and Supp. III), but under Baral's view no interest could accrue during the time between the filing of the return and the Service's assessment. Fortunately for the timely taxpayer, the Code definitively rejects Baral's position in this setting. Section 6611(d) of 26 U. S. C. explains that the date of payment is determined according to the provisions of § 6513, which, as noted, *supra*, at 435–436, plainly set a deemed date of payment for remittances of withholding and estimated income tax on the April 15 following the relevant taxable year.[2]

* * *

For the foregoing reasons, we affirm the judgment below.

*It is so ordered.*

---

[2] We need not address the proper treatment under § 6511 of remittances that, unlike withholding and estimated income tax, are not governed by a "deemed paid" provision akin to § 6513(b). Such remittances might include remittances of estimated estate tax, as in *Rosenman*, or remittances of any sort of tax by a taxpayer under audit in order to stop the running of interest and penalties, see, *e. g., Moran* v. *United States*, 63 F. 3d 663 (CA7 1995). In the latter situation, the taxpayer will often desire treatment of the remittance as a deposit—even if this means forfeiting the right to interest on an overpayment—in order to preserve jurisdiction in the Tax Court, which depends on the existence of a deficiency, 26 U. S. C. § 6213 (1994 ed. and Supp. III), a deficiency that would be wiped out by treatment of the remittance as a payment. We note that the Service has promulgated procedures to govern classification of a remittance as a deposit or payment in this context. See Rev. Proc. 84–58, 1984–2 Cum. Bull. 501.