851 So.2d 243 (2003)
Melida A. DEMORIZI, Appellant,
v.
Nestor M. DEMORIZI, Appellee.
No. 3D02-2063.
District Court of Appeal of Florida, Third District.
July 30, 2003.
*244 Peter H. Kircher, Miami, for appellant.
Curtis W. Brannon, Shalimar; and Mary A. Swayze, Miami, for appellee.
Before COPE and RAMIREZ, JJ., and NESBITT, Senior Judge.
NESBITT, Senior Judge.
This is an appeal from the trial court's order dismissing, for lack of subject matter jurisdiction, appellant Melida A. Demorizi's motion to compel reimbursement for Nestor M. Demorizi's use of $46,555 from a joint income tax deposit paid to the Internal Revenue Service. We reverse because the division of assets may not be fair to the former wife.
On June 15, 1999, while the parties were married and living together, and prior to the filing of the dissolution action, the wife issued a check for $46,555 to the IRS as an estimated tax deposit to be applied toward both parties' tax liability. The check bore both names and came from a joint checking account into which both parties' earnings were deposited. Months later, the parties separated and the wife filed for divorce. On March 6, 2000, the parties mediated a Settlement Agreement which was incorporated into a Final Judgment of Dissolution of Marriage on March 26, 2000. The Judgment and Agreement were silent as to the disposition of the tax deposit.
Thereafter, each party filed a separate 1999 tax return, with the husband filing first. He claimed and received credit for the entire tax deposit. When the wife later filed her return and claimed credit for half of the deposit, the IRS disallowed the credit.
In October 2000, seven months after the dissolution of their marriage, the parties returned to the trial court to litigate several issues. At that time, the wife's counsel raised the issue of the IRS funds. Counsel for the husband objected to discussion of the issue because it had never been raised in the pleadings. The trial court agreed.
On January 10, 2001, the parties entered into a second mediated settlement which was also silent as to the IRS funds. At both of the mediation sessions, the parties were represented by counsel and had their respective forensic accountants present. In a January 29, 2001 appearance before the trial court, counsel for the wife stated *245 that all issues had been resolved except attorney's fees.
On November 8, 2001, more than eighteen months after the Final Judgment was entered, and more than six months after all issues had ostensibly been resolved, the wife for the first time filed a pleading addressing the IRS deposit. The husband responded that, while there was no agreement about the deposit, he was justified in claiming the entire amount because he was the sole breadwinner. The wife asserts this is false and irrelevant because both parties worked and the funds used were admittedly marital funds. After a lengthy hearing, the trial court concluded that it lacked subject matter jurisdiction to revisit the equitable distribution of the parties' assets and liabilities.
The wife argues that the estimated tax payment was a marital asset and, because the final judgment failed to dispose of it, by operation of law the parties became tenants in common with respect to the funds.
The trial court erred in finding it did not have subject matter jurisdiction. Because the tax deposit, or the credit therefore, was an item of personal property omitted from the property settlement agreement and from the final judgment, the husband and wife became tenants in common in the property, by operation of law, upon entry of the final judgment. Powell v. Metz, 55 So.2d 915 (Fla.1952); Cleary v. Hough, 567 So.2d 1039, 1040 (Fla. 2d DCA 1990);. Pemelman v. Pemelman, 186 So.2d 552 (Fla. 2d DCA 1966); Wilkerson v. Wilkerson, 179 So.2d 592 (Fla. 2d DCA 1965).
This chancery court had, and continues to have, full jurisdiction over the parties and continuing jurisdiction to enforce its own orders and judgments. Goolsby v. Wiley, 547 So.2d 227 (Fla. 4th DCA 1989); Brandt v. Brandt, 525 So.2d 1017 (Fla. 4th DCA 1988). In enforcing the wife's rights that were established by operation of law upon entry of the final judgment, (and may have been violated when the husband unilaterally used the entire tax deposit for his individual return), the lower court would not have to re-open the entire equitable distribution scheme, Sweeney v. Sweeney, 583 So.2d 398 (Fla. 1st DCA 1991), or redetermine property rights previously settled by final judgment. Allison v. Allison, 605 So.2d 130 (Fla. 4th DCA 1992).
The overriding concern in this proceeding is to do equity. The dissolution statute itself states that its provisions are "in addition to all other remedies available to a court to do equity between the parties." Section 61.075(1), Florida Statutes (1999). In instances such as this we should be mindful of the duty of appellate courts to fashion equitable relief:
All courts of appeal are required to do equity. Sometimes that requires us to order that something be done which is just and equitable. Put differently, it is the maxim "equity will do what ought to be done."
Sterling v. Brevard County, 776 So.2d 281, 285 (Fla. 5th DCA 2000).
Once a court of equity acquires jurisdiction over a dispute, it is authorized to administer full, complete, and final relief. Cook v. Lee, 290 So.2d 65, 66 (Fla. 3d DCA 1974). Generally, courts of equity have wide discretion in fashioning remedies to satisfy the exigencies of the circumstances. Singer v. Tobin, 201 So.2d 799, 800-01 (Fla. 3d DCA 1967).
Schroeder v. Gebhart, 825 So.2d 442 (Fla. 5th DCA 2002).
Here, the trial court should have granted relief to the wife. Fairness requires that the wife should recover only that portion of the tax deposit which is shown by the evidence to be properly allocable *246 to her self-employment income for 1999, the tax year in question, if any. He who seeks equity must do equity. Williamson v. Williamson, 367 So.2d 1016 (Fla.1979); Diaz v. Diaz, 418 So.2d 1064 (Fla. 3d DCA 1982). Equity delights to do justice and not by halves. Skillman v. Baker, 142 So.2d 113, 114 (Fla. 1st DCA 1962). The record does not currently contain sufficient information to make such an allocation.[1]
While "piecemeal litigation" is to be discouraged, in this particular instance the equitable considerations outweigh the harm from any purported failure to pursue enforcement of the wife's rights at earlier stages of the proceedings below. As stated by the Florida Supreme Court in Wicker v. Board of Public Instruction of Dade County, 106 So.2d 550, 558 (Fla.1958): "[A] court of equity is a court of conscience; it should not be shackled by rigid rules of procedure and thereby preclude justice being administered according to good conscience."
An equity court will never be thwarted from fashioning a decree that will do right and justice between the parties. The trial court order is reversed with directions for the trial court to determine the portion of the tax deposit (if any) which should in fairness have been credited to the wife's taxes and to enter a supplemental final judgment awarding the wife the principal sum due together with prejudgment interest, costs and attorney's fees.
COPE, J., concurs.
RAMIREZ, J. (dissenting).
While I agree that the trial court had subject matter jurisdiction over Melida A. Demorizi's motion to compel reimbursement for Nestor M. Demorizi's use of $46,000 from a joint income tax deposit paid to the Internal Revenue Service, I would nevertheless affirm because the former wife waited approximately eighteen months after the final dissolution of marriage before seeking relief from the court. The majority in effect gives the wife a third bite at the apple under the auspices of equity.
I agree with the majority that it would be inequitable to foreclose the former wife from litigating this issue if the parties had only entered into one mediated Settlement Agreement. What is troublesome about our decision is that on October 19, 2000, seven months after the dissolution of their marriage, the parties returned to the trial court to litigate several issues. By that time, the wife and her counsel both knew that the husband had used the entire estimated tax because the record reveals that counsel raised the issue of the IRS funds in October 2000. When counsel for the husband objected to discussion of the issue because it had never been raised in the pleadings, the trial court agreed. The wife never moved to amend the pleadings.
Instead, on January 10, 2001, the parties entered into a second mediated settlement which was also silent as to the IRS funds. At both of the mediation sessions, the parties were represented by counsel and had their respective forensic accountants present. As the majority acknowledges, when the parties appeared before the trial court on January 29, 2001, counsel for the wife stated that all issues had been resolved except attorney's fees. After the wife got the benefit of her bargain, she decided to *247 return to court almost a year later and, on November 8, 2001, the wife for the first time filed a pleading addressing the IRS deposit. We should not condone such a piecemeal approach to litigation.
Piecemeal litigation is uniformly condemned, not only in civil cases, but in all litigation. "As a general rule, piecemeal litigation of mature claims is no more permissible in workers' compensation cases than in civil litigation. If a merits hearing occurs and mature claims are not litigated, the claims are considered waived, and later litigation is precluded by application of the doctrine of res judicata." Correa v. Miami Airport Hilton, 813 So.2d 1070, 1070-71 (Fla. 1st DCA 2002). Our rules governing "law of the case" and venue frequently cite to the avoidance of piecemeal litigation as its rationale. See, e.g., VL Orlando Bldg. Corp. v. AGD Hospitality Design & Purchasing, Inc., 762 So.2d 956 (Fla. 4th DCA 2000) (affirming transfer of venue in the interest of justice to avoid piecemeal litigation). Our rules of criminal procedure also take into consideration the reduction of piecemeal litigation. See Haag v. State, 591 So.2d 614 (Fla.1992).
I cannot agree that a tax payment is necessarily an asset over which the parties can become tenants in common. An estimated tax, like taxes that are withheld from wage employees, are payments made to the federal government pursuant to the Internal Revenue Code in fulfillment of an individual's tax liability. They are both "methods of collecting the income tax." Baral v. United States, 528 U.S. 431, 436, 120 S.Ct. 1006, 145 L.Ed.2d 949 (2000). In particular, the payment of estimated income taxes is considered payment to an account to be used towards the income tax liability imposed by federal statute. See 26 U.S.C. § 6315 (2003). Unlike a tax refund, the parties are not entitled to the use and benefit of the money. The money belongs to the United States Treasury.
Assuming that the wife had income during 1999 for which she had to pay estimated taxes, it is undisputed that the husband's income created the bulk of the tax liability. I believe that the wife's claim to a share of that money had to be made in a timely manner, and by failing to do so, she should be deemed to have waived it. Even if she was unaware that the husband would take the entire amount of the credit when she entered into the first settlement agreement, she was certainly aware of it at the time she negotiated the second agreement and her counsel represented to the court that the only remaining issue between the parties was attorney's fees.
We condone today a piecemeal approach to litigation that encourages parties to withhold pending matters and allows them to later bring additional claims so as to extract further concessions from the other spouse. I do not, however, propose to shackle trial courts under rigid rules of procedure. Instead, I simply believe that we should bring closure to this post-marital endless litigation and would require parties to bring all their known claims at once, not piecemeal.
NOTES
[1] In partitioning the property of tenants in common, "[t]he first step is to determine each party's percentage of ownership of the property." O'Donnell v. Marks, 823 So.2d 197, 199 (Fla. 4th DCA 2002). Under Florida law, "[i]n the absence of evidence to the contrary" co-tenants are presumed to own equal undivided interests. Levy v. Docktor, 185 B.R. 378, 381 (S.D.Fla.1995).