[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10283

_____

ALBERT G. HILL, III,

Petitioner-Appellant,

_versus_

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court
Agency No. 794-18

_____

Before WILLIAM PRYOR, Chief Judge, and HULL and MARCUS, Circuit Judges.

HULL, Circuit Judge:

This appeal concerns the Tax Court's jurisdiction over a taxpayer's motion to redetermine interest owed to the taxpayer.

Albert Hill sent $10,263,750 to the United States Internal Revenue Service ("IRS") as a "deposit" toward his expected gift tax liability. After an IRS audit examination and Hill's tax deficiency proceeding in the Tax Court, Hill and the IRS settled the deficiency proceeding, stipulating that Hill owed a gift tax deficiency of $6,790,000 for 2011. The IRS applied the $10,263,750 to that 2011 deficiency and issued Hill a check for the balance of $3,473,750.

Post-judgment, the parties did not dispute that the IRS owes Hill interest on that $3,473,750. Rather, they disputed the interest rate. The IRS used the interest rate for deposits, which is the federal short-term rate. Hill wanted the interest rate for overpayments, which is the federal short-term rate plus three percentage points. In the Tax Court, Hill filed a petition to reopen his case to redetermine interest.

The Tax Court has jurisdiction to redetermine interest due a taxpayer if the court previously found a remittance was an overpayment. So its jurisdiction turns on whether the Tax Court found that Hill made an overpayment of tax.

After review, and with the benefit of oral argument, we conclude there is no Tax Court finding that Hill made an

overpayment of tax and thus the Tax Court did not have jurisdiction over Hill's post-judgment motion to redetermine interest. Because the Tax Court lacked jurisdiction over Hill's motion, we affirm the Tax Court's decision denying Hill's motion to redetermine interest for lack of jurisdiction.

## I.    BACKGROUND

### A.    The 2010 Settlement Agreement

More than a decade ago, Hill became involved in litigation with his father and other family members in the U.S. District Court for the Northern District of Texas. This litigation concerned the distribution of assets derived from the Hunt Oil Company.

In May 2010, the parties executed a settlement agreement. To effectuate the settlement, the district court's order directed Hill to assign an installment agreement between Hill and his father to trusts for the benefit of Hill's children. That agreement entitled Hill to receive $30,675,000 from 2011 to 2015. In May 2011, Hill executed documents necessary to complete this assignment to his children's trusts.

### B.    Hill's Deposit

Anticipating that he would be liable for gift tax, Hill arranged to make a deposit under Internal Revenue Code ("I.R.C.") § 6603 toward his potential gift tax liability. Section 6603 allows a taxpayer to "make a cash deposit with the Secretary which may be used by the Secretary to pay any tax," such as a gift tax, "which has not been assessed at the time of the deposit." I.R.C. § 6603(a).

On February 23, 2012, the district court registry in Texas issued a $10,263,750 check, in the care of Andrew Burnett, Hill's representative. The check was payable to the U.S. Treasury.

On February 28, 2012, one of Hill's representatives delivered the check to an IRS office, and Burnett followed up with a letter, stating that Hill "intend[ed] for this deposit to satisfy the requirements of Section 6603(a) of the Internal Revenue Code." Burnett identified the disputable tax as "the potential tax imposed under subtitle B of the Internal Revenue Code," which covers estate and gift taxes, for tax year 2011.

On August 19, 2013, an IRS letter notified Hill that (1) it had credited $10,263,750 to his account for tax year 2011, but (2) it had not received his 2011 gift tax return. The IRS letter also informed Hill that, when he submitted his gift tax return, the IRS would "apply the credit to the tax [he] owe[d] and refund any overpayment."

On August 23, 2013, Hill responded that: (1) his representative had hand delivered to the IRS "a $10,263,750 deposit of tax," (2) the $10,263,750 credit "should be applied to 2012 rather than 2011," and (3) his potential gift tax was still "undetermined." The IRS transferred the $10,263,750 deposit to Hill's 2012 account.

## C.   Hill's Gift Tax Return for Tax Year 2012

On March 26, 2014, Hill filed a 2012 gift tax return, reporting that he owed no gift tax. Hill asserted that no completed gift had yet occurred because "matters [related to the 2010 settlement

agreement] were still being litigated and appealed." Hill also reported that he had prepaid the amount of $10,263,750, and he requested that that the IRS "refund" that "payment" of $10,263,750.

## D.    Hill Requests Return of the Deposit

Over the next several years, Hill made multiple requests for the return of the $10,263,750 deposit. On June 11, 2014, Hill made a formal request to the IRS for the "immediate return of his deposit as authorized by 26 U.S.C. § 6603(c)." Section 6603(c) provides that, "[e]xcept in a case where the Secretary determines that collection of tax is in jeopardy, the Secretary shall return to the taxpayer any amount of the deposit (to the extent not used for a payment of tax) which the taxpayer requests in writing." I.R.C. § 6603(c).

On July 22, 2014, Hill made another request to the IRS for "the return of his deposit in the amount of $10,263,750."

On August 22, 2014, the IRS requested that Hill explain: (1) whether the check was "accompanied by a writing which identified it as a deposit as directed in Rev. Proc. 2005-18," and (2) "the facts which caused [him] to suppose that gift tax of such magnitude might be owed for 2011 and/or 2012" so that the IRS could determine whether to examine his gift tax returns. Importantly, the IRS asked Hill if he agreed that the funds should be returned "to the District Court from which the payment originally came," rather than to Hill himself.

On February 4, 2015, Hill replied, confirming that the $10,263,750 check was a § 6603 "deposit" toward his potential gift tax liability for 2011 and then redirected to 2012. Hill also submitted the writing identifying the check as a "deposit" and requested the IRS "immediately return to Mr. Hill his $10,263,750 deposit."

### E.    IRS Examination of 2012 Gift Tax Return

On July 30, 2015, the IRS notified Hill that his 2012 gift tax return was selected for examination. From August 2015 to August 2016, the IRS corresponded with Hill and received documents from Hill.

On October 20, 2016, the IRS sent Hill a letter, recounting how the IRS's attorney had advised Hill's representative that the IRS's final determination of Hill's gift tax liability could differ from Hill's reported gift tax of $0 for tax year 2012. The IRS letter also advised it could release the funds but requested that Hill "confirm that [he] would like to move forward with [his] request for return of funds." The IRS observed that the parties to the 2010 settlement agreement had stipulated that "any refund of tax payments would be returned to the District Court's account holding the other funds involved in the litigation." Because "the District Court's account authorized the payment originally," the IRS asked if "the District Court should also send in a request for the return of funds in order to authorize the release [of the funds]." The record does not indicate that Hill ever responded to this question.

On December 14, 2016, the IRS completed its examination of Hill's gift tax return for 2012.  The IRS advised Hill of its three alternative determinations: (1) the gift was completed in 2010 when Hill settled the litigation, and the district court entered its final judgment; (2) the gift was completed in 2011 when Hill executed the assignment of the installment agreement to his children's trusts; or (3) the gift was completed in 2015 when the funds were transferred into the trusts for Hill's children.

The IRS observed that, in his 2012 gift tax return, Hill "attribut[ed] the Section 6603 deposit to this gift tax year only."  As there was no gift tax liability for 2012, the IRS advised Hill to "request in writing that the funds be applied to a different tax year in accordance with Revenue Procedure 2005-18" to avoid liability in the relevant tax year.  Otherwise, the § 6603 deposit would be returned to the district court.

## F.    Hill's Protest

On February 13, 2017, Hill filed a protest, disputing the IRS's determination of his gift tax liability.  This time, Hill requested that the IRS apply "his previous deposit of $10,263,750, made according to IRC § 6603, . . . to the disputed gift tax liability for 2010, 2011, and 2015."  The IRS then transferred Hill's deposit designated for 2012 to his account for 2010.

Hill's protest disputing his gift tax liability was not successful.  On October 18, 2017, the IRS issued a notice of deficiency, which assessed: (1) a gift tax deficiency of $10,386,250

for tax year 2010; (2) a statutory penalty of $2,336,906 under I.R.C. § 6651(a)(1) for failing to file a required gift tax return for tax year 2010; and (3) a statutory penalty of $595,131 under I.R.C. § 6651(a)(2) for failing to pay that tax.

## G.    Hill's Deficiency Proceeding in the Tax Court

On January 16, 2018, Hill filed a petition in the Tax Court to redetermine the deficiency for tax year 2010.  Hill's petition asserted that: (1) the IRS erred in determining his 2010 assignment to his children's trusts was a taxable gift, (2) he had "deposited $10,263,750 with the IRS while the legal effect of the [assignment] was being analyzed by [his] professional advisors," and (3) the IRS "misclassifie[d] th[is] deposit as a payment."

Prior to trial, the parties settled the deficiency proceeding. On May 31, 2019, the parties filed a joint stipulation that provided: (1) Hill made a taxable gift of $24,400,000 in 2011; (2) no gift tax was due for 2010 and 2015; and (3) "[t]he deficiency in this case will be computed without reference to an *advance payment* of $10,263,750 that was made on February 28, 2012."  (Emphasis added).

On June 26, 2019, the IRS sent a letter estimating the interest due to Hill.  The IRS stated that its calculation was "**only an estimate**" and estimated that the interest was $1,069,230.12, using the interest rate for overpayments.  The interest rate (1) for deposits is the federal short-term rate, and (2) for overpayments is

the federal short-term rate plus three percentage points. *See* I.R.C. §§ 6603(d)(4), 6621(a)(1).

## H.    Judge Gustafson's Stipulated Decision

On July 19, 2019, Tax Court Judge David Gustafson entered a stipulated decision. The first page of that final decision contained the parties' stipulations that Judge Gustafson adopted as the order and decision of the Tax Court as follows:

> Pursuant to the agreement of the parties in this case, it is
>
> ORDERED AND DECIDED: That there is a deficiency in gift tax due from petitioner for the calendar year 2011 in the amount of $6,790,000.00;
>
> That there are no deficiencies in gift tax due from, nor overpayments due to, petitioner for the calendar years 2010 and 2015;
>
> That there is no addition to tax due from petitioner for the taxable year 2010, under the provisions of I.R.C. § 6651(a)(1); and
>
> That there is no addition to tax due from petitioner for the taxable year 2010, under the provisions of I.R.C. § 6651(a)(2).

Judge Gustafson's electronic signature appeared at the end of this first page. By agreement of the parties, Judge Gustafson thus ordered and decided that a $6,790,000 deficiency existed for 2011, but no deficiency existed for 2010 and 2015.

A second page was part of the document.  That second page was signed by the parties' representatives, but not Judge Gustafson. It contained these stipulations by the parties:

> It is hereby stipulated that the Court may enter the foregoing decision in this case.
>
> It is further stipulated that interest will accrue and be assessed as provided by law on the deficiency due from petitioner.
>
> It is further stipulated that, effective upon the entry of this decision by the Court, petitioner waives the restrictions contained in I.R.C. § 6213(a) prohibiting assessment and collection of the deficiency (plus statutory interest) until the decision of the Tax Court becomes final.
>
> It is further stipulated that there is a *prepayment credit* in the amount of $10,263,750.00 which *payment* was made on February 28, 2012 and was credited to petitioner's tax year 2010 gift tax liability.  It is stipulated that the *prepayment credit* in the amount of $10,263,750.00 will be reversed for petitioner's tax year 2010 and applied to petitioner's tax year 2011 gift tax liability.  *It is further stipulated that the deficiency for the taxable year 2011 is computed without considering the prepayment credit of $10,263,750.00.*

It is further stipulated that interest will be credited or paid as provided by law on any *overpayment* in tax due to petitioner.

(Emphases added). The parties refer to these stipulations as "below-the-line stipulations" because they appear below Judge Gustafson's signature.

On October 17, 2019—ninety days after entry on the docket after no appeal was taken—the stipulated decision became final. *See* I.R.C. §§ 7481(a)(1), 7483.[1]

In January 2020, the IRS issued a check to Hill in the amount of $3,473,750, which was the difference between Hill's $10,263,750 deposit and the $6,790,000 deficiency for tax year 2011. It did not include interest.

## I.    Hill's Motion to Redetermine Interest

In August 2020, Hill filed a motion to redetermine interest in the Tax Court. Hill's motion alleged that: (1) his $10,263,750 remittance was designated as a § 6603 deposit, (2) the $3,473,750 that the IRS returned to Hill was "the exact difference between the amount [Hill] deposited and the deficiency [the Tax] Court

---

[1] Generally, § 6213(a) does not allow the IRS to collect a deficiency until the Tax Court's decision becomes final. I.R.C. § 6213(a). Hill's waiver of the restrictions in § 6213(a) allowed the $10,263,750 deposit to be applied instanter to the 2011 gift tax liability before the stipulated decision became final.

determined," and (3) he was owed interest of $1,267,322.80, using the interest rate for overpayments.

In response to Hill's motion, the IRS submitted that the Tax Court lacked jurisdiction to redetermine the interest owed to Hill. It pointed out that: (1) I.R.C. § 7481(c)(2)(B) gives the Tax Court jurisdiction over a motion to redetermine interest when the Tax Court "finds under section 6521(b) that the taxpayer has made an overpayment," but (2) Judge Gustafson's stipulated decision did not find that Hill made an overpayment of tax. The IRS asserted that, even if the Tax Court had jurisdiction over Hill's motion, Hill was owed only $218,121.22 in interest, using the interest rate for deposits.

With its response, the IRS submitted an "Activity Summary," which listed (1) $6,790,000 as an "Advance Payment of Determined Deficiency"; (2) $3,473,750 as a "Refund of Overpayment"; and (3) $218,121.22 as "Overpayment Interest." That interest, however, is calculated at the deposit rate of the federal short-term rate, not the overpayment rate of the federal short-term rate plus three percentage points. *See* I.R.C. §§ 6603(d)(4), 6621(a)(1).

In a reply brief, Hill argued for the first time that his $10,263,750 remittance should be deemed a payment of tax, rather than a deposit. Hill contended that: (1) the stipulated decision determined that he made an overpayment of tax in 2011; (2) the IRS treated his $10,263,750 remittance as an "advance payment";

and (3) his remittance lost its character as a deposit when the IRS refused to return it upon his requests.

## J.    Reassignment of Hill's Motion to Redetermine Interest

In July 2021, after briefing was completed, the Tax Court Chief Judge reassigned Hill's case from Judge Gustafson to Judge Albert Lauber for disposition of Hill's motion. In the Tax Court, Hill did not challenge this reassignment order.

## K.    Denial of Hill's Motion to Redetermine Interest

On October 25, 2021, the Tax Court denied Hill's motion to redetermine interest for lack of statutory jurisdiction. *Hill v. Comm'r*, 122 T.C.M. (CCH) 252 (T.C. 2021). Although jurisdiction existed over motions to redetermine interest on overpayments, the Tax Court concluded that it had no jurisdiction to redetermine Hill's interest because Judge Gustafson's stipulated decision (1) had found only that Hill had a gift tax deficiency of $6,790,000 in 2011 and (2) had not found that Hill made an "overpayment."

Further, the below-the-line stipulations (1) evidenced only an agreement between the parties, not findings by the Tax Court, (2) did not refer to any "overpayment," and (3) actually stated that the deficiency for tax year 2011 would be computed "without considering the prepayment credit of $10,263,750."

The Tax Court also concluded that the stipulated decision could not have found that Hill made an overpayment in 2011 because he (1) had called the $10,263,750 check a "deposit," and (2) had not made a payment of tax for any relevant year when the

Court's 2019 decision was entered.  The Tax Court observed that:
(1) Hill "initially designated the $10,263,750 check as a 'deposit'" in
February 2012; (2) Hill "consistently referred to it as a 'deposit'" in
his correspondence with the IRS and his filings with the Tax Court;
and (3) Hill likely characterized the remittance as a deposit for his
own benefit so that "[h]e could demand the immediate return of
his deposit at any time."

The Tax Court also reasoned that the IRS had not converted
Hill's deposit into a payment of taxes because (1) there was no
authority that the IRS could overrule Hill's designation of his
remittance as a deposit or any evidence that the IRS had done so,
(2) the IRS never refused to return the remittance, and (3) Hill did
not allege that he provided the information that the IRS requested
to effectuate the return of the remittance to the district court.  The
Tax Court observed that, while the parties used the terms "advance
payment" or "payment" when referring to the $10,263,750
remittance, "the word 'payment,' when appearing in these
contexts, was not being used in a technical sense" and "such
statements cannot override [Hill's] unambiguous designation of
the remittance as a 'deposit.'"

Because the $10,263,750 was a deposit and Judge Gustafson
had not found an overpayment, the Tax Court denied Hill's

22-10283                Opinion of the Court                15

motion to redetermine interest for lack of jurisdiction. Hill timely appealed.[2]

## II.    GENERAL PRINCIPLES

"The Tax Court is a court of limited jurisdiction and lacks general equitable powers." *Comm'r v. McCoy*, 484 U.S. 3, 7, 108 S. Ct. 217, 219 (1987); *see also* I.R.C. § 7442 ("The Tax Court . . . shall have such jurisdiction as is conferred on [it] by this title . . . ."). We thus examine the relevant statutes granting the Tax Court jurisdiction.

### A.    Jurisdiction over a Petition to Redetermine a Deficiency

I.R.C. § 6213(a) grants the Tax Court jurisdiction to redetermine a deficiency assessed by the IRS. I.R.C. § 6213(a). In general, a deficiency is the amount by which a tax imposed under the Code exceeds the amount reported by the taxpayer on his tax returns. *See id.* § 6211(a).

When the IRS determines that a taxpayer owes a deficiency, the IRS is authorized to send notice to the taxpayer, specifying the deficiency amount and demanding payment. *Id.* §§ 6303(a),

---

[2] In this appeal, Hill contends for the first time that the Tax Court erred in assigning his motion to redetermine interest to Judge Lauber after the underlying deficiency action was assigned to Judge Gustafson. Hill forfeited this issue by not raising it in the Tax Court. *Stubbs v. Comm'r*, 797 F.2d 936, 938 (11th Cir. 1986) (concluding that an issue not presented to the Tax Court "although briefed by the parties, is not properly before this [C]ourt"). In any event, Hill's contention lacks merit.

6212(a).  Within a specific time period, "the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency."  *Id.* § 6213(a).

Hill started this case with his petition to redetermine the deficiency assessed by the IRS.  When that deficiency proceeding was settled, the Tax Court entered the stipulated decision, which later became final.

The issue here is whether the Tax Court had jurisdiction to reopen Hill's case (post-judgment) to redetermine interest.  As explained below, not all taxpayers can go back to the Tax Court to redetermine interest.

## B.    Jurisdiction over a Post-Judgment Motion to Redetermine Interest

The Tax Court may reopen a final decision for the purpose of redetermining interest in limited circumstances.  *See* I.R.C. § 7481(c)(1).  Section 7481(c)(1) provides that:

> [I]f, within 1 year after the date the decision of the Tax Court becomes final . . . , the taxpayer files a motion in the Tax Court for a redetermination of the amount of interest involved, then *the Tax Court may reopen the case solely to determine whether the taxpayer has made an overpayment of such interest or the Secretary has made an underpayment of such interest and the amount thereof.*

*Id.* (emphasis added).[3]

There are two categories of deficiency cases that may be reopened (post-judgment) to redetermine interest. First, under § 7481(c)(2)(A), the Tax Court may reopen the case when the IRS has assessed a deficiency "which includes interest . . . , and . . . the taxpayer has paid the entire amount of the deficiency plus interest claimed by the Secretary." *Id.* § 7481(c)(2)(A). Hill does not argue that the Tax Court had jurisdiction over his motion under § 7481(c)(2)(A).

Second, the Tax Court may reopen a deficiency case (post-judgment) when it *"finds under section 6512(b) that the taxpayer has made an overpayment." Id.* § 7481(c)(2)(B) (emphasis added). Section 6512(b) provides, in relevant part, that:

> *[I]f the Tax Court* finds that there is no deficiency and further finds that the taxpayer has made an overpayment . . . of gift tax . . . in respect of which the Secretary determined the deficiency, or *finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.*

---

[3] The parties agree that Hill's motion to redetermine interest was timely filed.

*Id.* § 6512(b)(1) (emphases added).

The Code references overpayment, but it "does not contain a general definition of 'overpayment.'" *Gen. Elec. Co. & Subsidiaries v. United States*, 384 F.3d 1307, 1312 (Fed. Cir. 2004). In interpreting the term "overpayment" in other tax provisions, the Supreme Court has "read the word 'overpayment' in its usual sense, as meaning any payment in excess of that which is properly due." *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531, 68 S. Ct. 229, 233 (1947). The Supreme Court has explained that "[t]he commonsense interpretation is that a tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all." *United States v. Dalm*, 494 U.S. 596, 609 n.6, 110 S. Ct. 1361, 1368 n.6 (1990) ("The word encompasses 'erroneously,' 'illegally,' or 'wrongfully' collected taxes . . . ." (citation omitted)).

Similarly, our Court has observed that "[a]n overpayment occurs whenever a taxpayer has paid an amount over and above his true tax liability." *Glaze v. United States*, 641 F.2d 339, 343 (5th Cir. Unit B Apr. 1981) (quotation marks and citation omitted); *see also Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1263 (11th Cir. 2006) ("[A]ny payment is an overpayment when no payment was due.").

## C.    Payments and Deposits

As further background, it helps to understand why taxpayers, like Hill, will expressly designate a remittance as a "deposit," as opposed to a payment. Whether the taxpayer makes

a deposit or a payment can affect whether the taxpayer can challenge the amount of a deficiency.

Generally, when a taxpayer makes an undesignated remittance, the IRS treats that remittance as a payment and applies it "against any outstanding liability for taxes, penalties[,] or interest." *See* Rev. Proc. 2005-18 § 4.01(2), 2005-13 I.R.B. 798, 799.[4] "If an undesignated remittance is made in the full amount of a proposed liability," it "will be treated as a payment of tax, a notice of deficiency will not be mailed[,] and the taxpayer will not have the right to petition the Tax Court for a redetermination of the deficiency." *Id.* § 4.03, 2005-13 I.R.B. at 800.

By contrast, a taxpayer who makes a "deposit" can challenge an alleged deficiency in the Tax Court without accruing underpayment interest on the disputed tax, up to the amount of the deposit. *See* I.R.C. §§ 6601(a), 6603(a)–(b), 6213(a). The Supreme Court has recognized that "the taxpayer will often desire treatment of the remittance as a deposit—even if this means forfeiting the right to interest on an overpayment—in order to preserve jurisdiction in the Tax Court, which depends on the existence of a deficiency," which "would be wiped out" if the

---

[4] Throughout their briefs, both parties cited and relied upon Revenue Procedure 2005–18. No party raised a deference issue under *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984), and thus we do not address *Chevron*.

remittance were treated as a payment. *Baral v. United States*, 528 U.S. 431, 439 n.2, 120 S. Ct. 1006, 1011 n.2 (2000).

Deposits are returnable on demand. If the taxpayer requests the return of his deposit in writing before the deposit is used to pay a tax, the IRS must return it to the taxpayer unless the IRS determines that the collection of tax is in jeopardy. I.R.C. § 6603(c).

But once the deposit is applied to pay a tax, the taxpayer may submit "a claim for credit or refund as an overpayment." Rev. Proc. 2005-18 § 6.01, 2005-13 I.R.B. at 800 ("A deposit made pursuant to section 6603 is not subject to a claim for credit or refund as an overpayment until the deposit is applied by the [IRS] as payment of an assessed tax of the taxpayer.").

With this background, we turn to Hill's arguments.

## III.    DISCUSSION

The parties agree that the Tax Court had jurisdiction to reopen Hill's case if the Tax Court "finds that there is a deficiency but that the taxpayer has made an overpayment of such tax." I.R.C. § 6512(b)(1). Hill contends the Tax Court's stipulated decision made the required finding of an overpayment.[5] We review Hill's arguments in that regard.

---

[5] This Court reviews de novo the Tax Court's legal conclusions, including questions of subject-matter jurisdiction and statutory interpretation. *Greenberg v. Comm'r*, 10 F.4th 1136, 1155 (11th Cir. 2021).

## A.   Tax Court's Stipulated Decision

Hill emphasizes that the Tax Court expressly found: (1) that he owed a $6,790,000 deficiency for tax year 2011; and (2) there were no deficiencies or overpayments for tax years 2010 or 2015. Hill argues that "the only tenable conclusion" from the two stipulated findings is that he made an overpayment of tax for 2011. We do not agree.

It is obvious that the Tax Court did not make an express finding that Hill had made an overpayment of tax for 2011. And, contrary to Hill's argument, the Tax Court did not implicitly, or in substance, find that he made an overpayment of tax. Indeed, the Tax Court's findings on the first page are also consistent with a determination that Hill made a $10,263,750 deposit that had not yet been applied to the deficiency for tax year 2011.

At most, the Tax Court was silent on whether Hill made an overpayment for tax year 2011. The Tax Court's silence cannot be, and is not, a finding of an overpayment for § 6512(b)(1) jurisdictional purposes.

## B.   Below-the-Line Stipulations

We now turn to the below-the-line stipulations on the second page. Hill argues that the below-the-line stipulations (1) also constituted findings by the Tax Court and (2) stated that he made an overpayment of tax.

For several reasons, we conclude these below-the-line stipulations reflect an agreement between the parties and were not

judicial findings by the Tax Court.  Furthermore, these stipulations do not even state that Hill made an overpayment.

For starters, the below-the-line stipulations were separate and distinct from the Tax Court's findings on the first page of the stipulated decision.  These stipulations were memorialized below Judge Gustafson's signature on a page signed only by the parties' representatives.  Under the Tax Court Rules, a stipulation for trial is treated as a "conclusive admission by the parties to the stipulation."  Tax Ct. R. 91(e); *accord G.I.C. Corp. v. United States*, 121 F.3d 1447, 1450 (11th Cir. 1997) ("[P]arties are bound by their stipulations and a pretrial stipulation frames the issues for trial.").  There is no reason to treat stipulations for settlement differently.  While the below-the-line stipulations may be binding *against the IRS*, these stipulations were not findings *by the Tax Court*.

Second, we reject Hill's argument that the first sentence in the below-the-line stipulations—"[i]t is hereby stipulated that the Court may enter the *foregoing* decision in this case"—was a finding of fact necessary for the Tax Court to enter judgment. (Emphasis added).  To the contrary, this stipulation indicates that only the *foregoing* stipulations on the first page of the stipulated decision constitute the decision of the Tax Court.

Third, Hill misreads how far the below-the-line stipulations go.  Nothing in them constitutes a stipulation, even by the parties, that the $3,473,750 was an overpayment of tax.  We explain why.

Hill relies on two below-the-line stipulations that reference "prepayment credit" and "payment" as follows: (1) "there is a *prepayment credit* in the amount of $10,263,750.00 which *payment* was made on February 28, 2012 and was credited to petitioner's tax year 2010 gift tax liability"; and (2) "the *prepayment credit* in the amount of $10,263,750.00 will be reversed for petitioner's tax year 2010 and applied to petitioner's tax year 2011 gift tax liability."[6] (Emphases added).

These two stipulations do not identify or treat Hill's original $10,263,750 remittance as a payment toward his 2011 gift tax liability. Read properly, the stipulations state that the $10,263,750 initially was credited to Hill's 2010 gift tax liability and now *will be applied* as a payment toward his 2011 gift tax liability.

In fact, the very next below-the-line stipulation states that "the deficiency for the taxable year 2011 is computed *without considering the prepayment credit of $10,263,750.00.*" (Emphasis added). Had the parties agreed to treat the $10,263,750 as a payment of tax for 2011, it would not have been disregarded in the deficiency computation of $6,790,000.

---

[6] Hill also directs our attention to this below-the-line stipulation: "It is further stipulated that interest will be credited or paid as provided by law on any *overpayment* in tax due to petitioner." (Emphasis added). However, this is a general stipulation that tracks the Internal Revenue Manual's ("I.R.M.") recommended form language about interest accrual. *See* I.R.M. § 35.8.2.5(3) (Aug. 11, 2004). It does not in any way identify the $3,473,750 excess remittance as an overpayment.

Fourth, we reject Hill's claim that the Tax Court required a finding of an exact amount of overpayment in order to satisfy the jurisdictional requirement of § 7481(c)(2)(B). This claim is belied by the record. The Tax Court determined that it lacked jurisdiction because Judge Gustafson's stipulated decision "did not find that [Hill] had made an overpayment," not because the stipulated decision failed to identify the exact amount of an overpayment.

In sum, because Judge Gustafson's stipulated decision did not find that Hill made an overpayment of tax, the Tax Court did not err in denying Hill's motion to redetermine interest for lack of jurisdiction.

## IV.    HILL'S OTHER ARGUMENTS

### A.    Intent of the Parties

Hill also argues that, to the extent the stipulated decision was ambiguous, we may consider extrinsic evidence of the parties' communications, such as: (1) the IRS's "estimate of the overpayment interest," calculated using the overpayment interest rate, and (2) the "Activity Summary" that characterized the $3,473,750 excess remittance as a "Refund of Overpayment." Hill argues that this evidence removes any doubt that the parties intended to treat the $3,473,750 excess remittance as an overpayment.

We disagree. The intent of the parties has no bearing on the ultimate issue in this case—whether the Tax Court found that Hill made an overpayment of tax.

Moreover, the evidence of the parties' intent is decidedly mixed. Hill argues that his remittance became a payment on August 23, 2013, when he requested that the remittance "be applied to 2012 rather than 2011." Yet Hill's August 23, 2013 letter referred to the remittance as a "deposit" and noted that the potential gift tax for 2012 was still "undetermined." Hill again referred to the $10,263,750 remittance as a "deposit" in later communications with the IRS and even in his motion to redetermine interest. Tellingly, Hill only began to refer to the remittance as an overpayment in his reply brief in those interest proceedings after the IRS pointed out that the Tax Court lacked jurisdiction to redetermine interest with respect to a deposit.

## B.   Advance Payment

Next, Hill emphasizes that, before the settlement, the IRS sent him an estimate of the interest he was owed and classified his remittance as an "Advance Payment of Determined Deficiency." The parties' joint stipulations, before the settlement, also referred to the remittance as an "advance payment."

As the IRS points out, the I.R.M. states that, when the IRS processes a § 6603 deposit, this deposit should be classified as an "Advance Payment of Determined Deficiency." *See* I.R.M. § 20.2.4.8.2.1(1) (Mar. 5, 2015). Thus, the term "advance payment" could refer to a deposit, which is submitted to the IRS and then can be applied to pay a tax. *See* I.R.C. § 6603(a). In any event, the parties' use of the term "advance payment" before the stipulated

decision was entered does not show that Judge Gustafson found that Hill made an overpayment in the stipulated decision.

## C.    Return of Deposit

Hill also argues that the $10,263,750 remittance lost its character as a deposit because the IRS did not return it on demand. We agree with the Tax Court that the IRS did not convert Hill's remittance into a payment of taxes for 2011.

As the Tax Court indicated, the IRS never refused to return his deposit. Hill did request, in writing, the return of his deposit at least four times. However, early on in August 2014, the IRS pointed out the $10,263,750 check was issued by the district court and asked if those funds should be sent to the district court, rather than Hill himself. Later, Hill did not provide information that the IRS requested to effectuate the return of his deposit. On October 20, 2016, the IRS sent Hill a letter, requesting that Hill "confirm that [he] would like to move forward with [his] request for return of funds" and asking if "the District Court should also send in a request for the return of funds in order to authorize the release [of the funds]." Hill does not allege that he ever responded to this question.

Additionally, Hill has cited no authority stating that a designated deposit becomes a payment merely because the IRS does not return it on demand. *Cf. Dillon Tr. Co. v. United States*, 162 Fed. Cl. 708, 720 (2022) ("[Section] 6603(c) does not enumerate the number of days or months in which the IRS

must return the deposits, nor does it use time-sensitive phrases such as 'immediately' or 'within a reasonable time.'"). Nothing in § 6603 imposes the on-demand time constraint Hill suggests. *See* I.R.C. § 6603(c).

### D.    Post-Decision Issuance of $3,473,750 Check

Hill also asserts that "[t]he ultimate test of whether the Tax Court had found an overpayment under section 6512(b) would inhere in the consequences that flowed from the entry of its decision document." Hill contends that, because he received a check for $3,473,750 on January 6, 2020, after his original $10,263,750 remittance was applied to the $6,790,000 deficiency, the Tax Court must have found an overpayment under § 6512(b)(1).

Hill's argument again ignores that the Tax Court must "find[]"an overpayment before the court can exercise jurisdiction over a motion to redetermine interest. I.R.C. § 7481(c)(2)(B). Here, the Tax Court's findings, not the parties' subsequent conduct, control whether the Tax Court had jurisdiction over Hill's motion to redetermine interest. How the $10,263,750 was applied *after* the Tax Court's stipulated decision was entered has no bearing on whether the Tax Court found that Hill made an overpayment.

## V.    CONCLUSION

Because the Tax Court did not have jurisdiction to rule on Hill's motion to redetermine interest, we affirm the Tax Court's dismissal of Hill's motion for lack of jurisdiction.

**AFFIRMED.**